182 N.J. Super. 58 (1981)
440 A.2d 42
ALBERT ENOURATO, PLAINTIFF-APPELLANT,
v.
NEW JERSEY BUILDING AUTHORITY, THE DIRECTORS OF THE NEW JERSEY BUILDING AUTHORITY, BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY, CLIFFORD A. GOLDMAN, STATE TREASURER OF THE STATE OF NEW JERSEY, EARL JOSEPHSON, ACTING DIRECTOR, DIVISION OF PURCHASE AND PROPERTY (DIVISION OF THE TREASURY, STATE OF NEW JERSEY), EDWARD F. MEARA, III, CHAIRMAN, NEW JERSEY BUILDING AUTHORITY, AND W. HARRY SAYEN, NANCY BEER, EDWARD L. HOFFMAN, JOHN H. WALTHER, AL FAIELLA, RAMON RIVERA, BERNARD E. KELCHICK, EDWARD PULVER, DIRECTORS, NEW JERSEY BUILDING AUTHORITY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1981.
Decided December 17, 1981.
*62 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
Murray Gendzel argued the cause for appellant (DeGeorge & Gendzel, attorneys; David S. Lieberman, on the brief).
Sherrie L. Gibble, Deputy Attorney General, argued the cause for respondents (James R. Zazzali, Attorney General, attorney; Erminie L. Conley, Assistant Attorney General, of counsel; Peter D. Pizzuto, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Plaintiff, a resident and taxpayer in New Jersey, brought this action by filing a complaint with Judge Paul G. Levy in the Superior Court, Law Division, Mercer County, on November 24, 1981. Plaintiff alleged that he owns property in Ewing Township, Mercer County, which he leases to the State of New Jersey for use by the Department of Environmental Protection, Division of Water Resources, and for other state agencies. The complaint further alleged that the Legislature by L. 1981, c. 120, N.J.S.A. 52:18A-78.1 et seq., had established the New Jersey Building Authority (hereinafter "Authority") for the purpose of constructing and operating office buildings and related facilities to meet the needs of agencies of the State. Plaintiff further set forth that the Authority could carry out its functions by borrowing up to $250,000,000 and by constructing and otherwise providing space for state agencies. Plaintiff noted that under L. 1981, c. 120, the debts of the Authority are not general obligations of the State and that neither the credit of the State nor its taxing authority is pledged to pay the debts of the Authority. Plaintiff maintained that the Authority would raise revenues to satisfy its obligations by leasing its facilities to the State. Plaintiff also noted that no project, the costs of which are to exceed $100,000, could be undertaken unless approved by a concurrent resolution of the Legislature. Plaintiff alleged that L. 1981, c. *63 120, was unconstitutional because (1) it violated the debt limitations in the New Jersey Constitution; (2) the provision for legislative oversight violated the state constitutional requirement that the powers of the three branches of government be separate and (3) the Legislature, though obligated to do so, had not required that the Governor approve the concurrent resolution.
Plaintiff's complaint caused defendants immediate difficulties, for defendants had intended to execute a contract for the sale of $135,000,000 in bonds on November 25, 1981. Accordingly, defendants requested the trial court to schedule the return on the order to show cause on the same day that the complaint was filed. The trial judge granted this request notwithstanding plaintiff's objections to the procedure. At the return defendants were permitted to move orally to dismiss. After hearing argument Judge Levy in an oral opinion found that there was no valid basis for any of plaintiff's claims. Accordingly, he ordered the complaint dismissed. On the same day he signed the order dismissing the action.
Notwithstanding defendants' speedy success at the trial level they conceived that the litigation, since not terminated on the appellate level, was still an impediment to the sale of the bonds. Accordingly, defendants on November 25, 1981, on notice to plaintiff, made application to this court to shorten the time within which plaintiff could appeal from the order of dismissal. We heard argument on this request on that day and granted defendants substantial relief. We ordered that plaintiff, if he appealed, was to do so on or before November 30, 1981. We further provided that if plaintiff appealed, briefs were to be filed by December 4, 1981. Argument was scheduled before us on December 14, 1981. Plaintiff in fact appealed and briefs were filed and oral argument held as scheduled. At the conclusion of oral argument we announced from the bench that the judgment was affirmed and that this opinion would follow.
*64 Plaintiff raises preliminary procedural objections. He points out that when he filed the complaint the trial judge issued an order for defendants to show cause later on the same day why a preliminary injunction should not be issued restraining defendants from selling bonds. Defendants then orally moved to dismiss the complaint. The judge entertained and granted the motion. Plaintiff maintains that the judge could, at the return of the order to show cause, grant or deny the preliminary relief but could not dismiss the action. Plaintiff asserts that there were factual matters to resolve, whether the Authority was an autonomous agency, whether the proposed lease to the State was a true lease or an installment contract for sale, whether there was an inappropriate intrusion by the Legislature into an executive function and whether the legislation was a device to circumvent the debt limitation clause of our State Constitution. Plaintiff further asserts that he was denied the right of discovery to establish a factual basis for his allegations.
Plaintiff also objects to the acceleration of the appellate proceedings. He seems to suggest that this court lacks authority to require him to appeal within the abbreviated period and that in any event there was no reason to grant such relief.
Plaintiff, of course, also raises substantive challenges to the sale of the bonds and to L. 1981, c. 120. He maintains that the sale of bonds violates the debt limitation clause of our State Constitution, N.J.Const. (1947), Art. VIII, § II, par. 3; that the provision for legislative oversight violates the constitutional requirement of separation of powers, Id., Art. III and that the concurrent resolution is invalid since there is no provision for presentation to the Governor for approval or veto. Id., Art. V, § I, par. 14(a).
We deal first with plaintiff's procedural objections. Ordinarily a trial judge should not dismiss an action as summarily as was done here. A motion to dismiss should be made on notice to plaintiff. R. 4:6-2; R. 4:6-3. If matters outside the pleadings are considered, it is treated as a motion for summary *65 judgment. R. 4:6-2. Yet there can be no doubt that the judge in fact had the power to dismiss the action on the same day that the complaint was filed. R. 1:6-2 provides that a court may permit a motion to be made orally. R. 1:6-3 permits the court to provide by order for the time for hearing of a motion. Thus, the rules clearly permit a judge to schedule an oral motion to dismiss on short notice. Even absent such clear authority, R. 1:1-2 provides that to avoid an injustice the judge may relax or dispense with any rule unless otherwise precluded. In the circumstances we have no doubt that the judge had the power to dismiss the complaint on defendants' application on the day it was filed.
The more substantial objection to the procedure in the Law Division relates to whether the court properly exercised its discretion in hearing the matter so summarily. Surely only an extraordinary situation could justify such a procedure. Here the judge was dealing with a situation that beyond doubt was emergent in nature. It is undisputed that the Authority intended to sign an agreement on November 25, 1981, the day following the filing of the complaint, to sell $135,000,000 worth of bonds to build facilities principally for the use of state agencies. The construction costs alone for the project were contemplated to be $113,000,000. It is a matter of common knowledge that interest rates on public bonds (as well as other obligations) vary. The Authority had determined that the appropriate time to contract for the sale of this substantial bond issue had arrived. Yet the pendency of the litigation precluded the Authority from marketing its securities. Defendants assert and plaintiff has not otherwise suggested that the litigation renders the bonds unmarketable. We further observe that the summary relief was being sought against plaintiff who had after all initiated the action and thus presumably should have been in a position to *66 support his allegations.[1] The totality of the circumstances including the lack of material factual disputes, the public importance of the project, the large amount in controversy, the ongoing chilling effect of the litigation on the financing efforts of the Authority and the fact that relief was being sought by defendants has convinced us that Judge Levy properly disposed of the matter in this unusual fashion.
However, we add a caveat. We are not to be understood generally to approve the procedure followed here or to suggest that it would frequently be appropriate. It will be a rare case in which a complaint should be dismissed on such short notice without a plaintiff being given a more substantial opportunity to support his complaint. We simply hold that in the unique circumstances here that the trial court properly exercised its discretion to hear the matter so summarily.
There is no doubt that this court had the power to accelerate the time for plaintiff to file any appeal and, in the event of appeal, to shorten the time for filing and service of briefs. The Supreme Court in DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970), followed exactly that procedure. There the Appellate Division had jurisdiction over a pending appeal from a judgment entered in favor of defendants in connection with a low- and moderate-income housing project in Englewood. A second judgment had also been rendered in favor of defendants in the trial court. Defendants then moved for direct certification of the first appeal and to compel plaintiffs to appeal, if at all, from the second judgment by a short date. The Supreme Court granted certification of the first appeal and did fix accelerated dates for plaintiffs to file the second appeal and a short date for briefs to be filed on that second appeal. The court found authority for this procedure in R. 1:1-2 and R. 2:9-2. As already noted, R. 1:1-2 permits a *67 court to relax or dispense with a rule to avoid an injustice. R. 2:9-2 provides that the time for taking any proceeding on appeal may be accelerated.
Plaintiff seeks to distinguish DeSimone on the basis that the Supreme Court was acting with respect to its own rules and that one appeal was already properly pending. We see no reason to honor these distinctions. There is no doubt at all that R. 1:1-2 and R. 2:9-2 are applicable in this court. While it may be acknowledged that as an intermediate appellate court we ordinarily require adherence to the rules established by the Supreme Court, nevertheless our usual reluctance to dispense with the rules is derived from a sense of propriety rather than from a perceived absence of power. Nor do we see why the fact that one appeal was pending in DeSimone is germane. The Supreme Court did not order the appeal accelerated in the pending appellate matter. Rather, it acted with respect to the case not yet appealed. Its decision is devoid of suggestion that it conceived that its power to accelerate the appeal was in any way dependent on the fact that one appeal was pending in an ordinary fashion. Accordingly, we hold that our acceleration order was within our power.
We also hold that we properly exercised our discretion in entering the order. Indeed, the same factors which have convinced us that the trial judge appropriately accelerated the proceedings there have convinced us that we acted properly in shortening the time here for the appeal and for briefs. The public importance of this case requires that the matter be resolved so that if defendants may lawfully proceed with the project, the litigation itself will not frustrate their actions.
Plaintiff's initial substantive objection is that the proposed sale of the bonds will violate the debt clause of our Constitution, N.J.Const. (1947), Art. VIII, § II, par. 3. Plaintiff does not contend that any obligation of the State under the lease between the Authority and the State will in itself cause a violation of the debt clause.
*68 Determination of whether L. 1981, c. 120, authorizes a debt in violation of the Constitution requires that the statute be examined in some detail. The Authority was established to provide office space and related facilities for the State Government. N.J.S.A. 52:18A-78.3. The Authority itself is an instrumentality of the State. N.J.S.A. 52:18A-78.4(a). It has broad powers to provide for office space for the State. N.J.S.A. 52:18A-78.5. It may, upon acquiring a property, sell, lease, sublease or otherwise dispose of any project to any state agency. N.J.S.A. 52:18A-78.5(o). Nevertheless, any liability incurred by a state agency for rent to the Authority is subject to and dependent upon appropriations being made from time to time by the Legislature. Ibid.
The Authority is authorized to issue bonds and notes in an amount not to exceed $250,000,000 for the purposes of carrying out its functions. N.J.S.A. 52:18A-78.14(a). The bonds and notes are not in any way a debt or liability of the State or any political subdivision and shall not create or constitute any indebtedness, liability or obligation of the State or any political subdivision. N.J.S.A. 52:18A-78.14(f). Further, delivery of any bonds or notes does not constitute a pledge of the faith and credit of the State or any of its political subdivisions. Rather, the bonds and notes are payable solely from revenues or funds pledged or available as authorized by the law. Finally, the bonds and notes when issued must contain on their face a statement setting forth these fiscal and legal limitations. Ibid.
There are three significant and, for purposes of this litigation, germane limitations on the power of the Authority. N.J.S.A. 52:18A-78.4(i) provides that a copy of the minutes of any meeting of the Authority shall be delivered to the Governor and to the presiding officer of each house of the Legislature. No action taken at the meeting shall have effect until 15 days after the minutes have been delivered unless during the 15 days the Governor approves it. If the Governor vetoes the action within the 15 days, the action will be of no effect. In the case of the acquisition, construction, rehabilitation, repair or improvement *69 of a project with an estimated cost to exceed $100,000 the Authority must obtain a concurrent resolution of both houses of the Legislature within 45 days of the submission of the project to the Legislature for approval. N.J.S.A. 52:18A-78.6 and.8(b). Finally N.J.S.A. 52:18A-78.9 provides that no lease agreement may be executed by the Authority unless first approved by the presiding officer of each house of the Legislature.
Defendants have included in their appendix an unexecuted copy of the lease which they propose be entered into between the Authority and the State. At oral argument it was asserted by defendants and not disputed by plaintiff that the lease was a correct copy of the lease between the parties and has in fact been executed. In the circumstance we accept these representations. The lease itself is a highly detailed 39-page instrument. Indeed, it contains the types of provisions that would be anticipated to appear in an instrument providing for such a major transaction. The term of the lease commences when the Authority delivers its first bonds or notes to fund the project. It terminates January 1, 2025 unless earlier ended in accordance with the agreement. The Authority is to obtain the land for the project, but the State is to build it as agent for the Authority. The Authority will provide funds for the project by selling bonds and notes. The rent basically is to be an amount sufficient to satisfy the Authority's obligations on the bonds and notes. Nevertheless, in conformity with N.J.S.A. 52:18A-78.5(o) the lease provides that all rent payments shall be subject to and dependent upon appropriations made by the Legislature from time to time. The State is obliged to pay all expenses for the building and to keep the property insured. There are provisions (not at all unusual in a lease) dealing with destruction of the property, condemnation, quiet enjoyment, waste, inspection, assignment, subletting, defaults, remedies, waiver of remedies and other matters. We perceive no reason to detail these provisions.
Upon the expiration of the lease and the payment of the bonds and notes the project is to be conveyed to the State. During the term of the lease the State may acquire the project *70 by providing money to pay all of the Authority's obligations pertaining to the project plus $1.
It is difficult to find a violation of the debt clause authorized by L. 1981, c. 120, or in fact being committed by defendants. That clause reads as follows:
3. The Legislature shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of the State, which together with any previous debts or liabilities shall exceed at any time one per centum of the total amount appropriated by the general appropriation law for that fiscal year, unless the same shall be authorized by a law for some single object or work distinctly specified therein. Regardless of any limitation relating to taxation in this Constitution, such law shall provide the ways and means, exclusive of loans, to pay the interest of such debt or liability as it falls due, and also to pay and discharge the principal thereof within thirty-five years from the time it is contracted; and the law shall not be repealed until such debt or liability and the interest thereon are fully paid and discharged. No such law shall take effect until it shall have been submitted to the people at a general election and approved by a majority of the legally qualified voters of the State voting thereon. All money to be raised by the authority of such law shall be applied only to the specific object stated therein, and to the payment of the debt thereby created. This paragraph shall not be construed to refer to any money that has been or may be deposited with this State by the government of the United States. Nor shall anything in this paragraph contained apply to the creation of any debts or liabilities for purposes of war, or to repel invasion, or to suppress insurrection or to meet an emergency caused by disaster or act of God. [N.J. Const. (1947), Art. VIII, § II, par. 3]
The clause by its plain terms deals with debts and liabilities of the State. There are arguably two debts created to finance the activities of the Authority. One debt is the Authority's direct obligation to its bondholders. The second is the liability of the State to the Authority to pay the rent on the lease. But the Legislature has declared in language which admits of no doubt that the liability of the Authority on its debt is simply not a liability of the State. Rather the bondholders can look only to the revenues of the Authority for satisfaction of their claims and not to the Legislature itself. Further, plaintiff does not even contend that the liability of the State on the lease in itself is a violation of the debt clause and, in any event, it clearly is not. Both the statute and the lease clearly indicate that all rent payments from the State are subject to appropriations *71 being made by the Legislature. Further, the State may incur liability for future rentals without violating the debt clause. Bulman v. McCrane, 64 N.J. 105, 117-118 (1973). Inasmuch as no liability on the bonds or the lease will be incurred in violation of the debt clause, we see no constitutional infirmity from the Legislature authorizing the liabilities in tandem.
The only authority which causes any doubt on what appears to be a clear and inevitable result is McCutcheon v. State Building Authority, 13 N.J. 46 (1953), a case decided by a sharply divided court. In McCutcheon the Supreme Court dealt with the constitutionality of an authority established to construct buildings to be leased to state agencies. The authority was to finance its activities by the sale of bonds payable solely from revenues from rentals. The court invalidated the plan because it perceived that in reality the so-called leases were installment purchase contracts. 13 N.J. at 66. The dissenting justices would have held that the bonds were not obligations or liabilities of the State because the authorizing statute said precisely that. 13 N.J. at 73. The dissenters would have further held that the leases were exactly what they purported to be. 13 N.J. at 70-71.
If McCutcheon were the last Supreme Court decision construing the debt clause, there would be some question as to the validity of L. 1981, c. 120.[2] Yet we need not distinguish McCutcheon for it is apparent that as precedent the case is dead; it simply has not as yet been interred. In Clayton v. Kervick, 52 N.J. 138 (1968), the Supreme Court held that the statute creating the New Jersey Education Facilities Authority did not offend the debt clause. The Authority was to construct projects for public and private colleges which were to repay the Authority by paying rents or in some instances repaying the loans. The *72 Authority was to issue bonds which were recited not to be debts of the State. The Clayton court clearly disapproved McCutcheon. It pointed out that following McCutcheon many courts in other states had rejected its thesis. 52 N.J. at 153. It did not, however, expressly overrule McCutcheon. Rather, it observed that that case was distinguishable. Nevertheless the Clayton court indicated that the foreign decisions and the dissent in McCutcheon were clearly more persuasive than its majority opinion. 52 N.J. at 154. In the circumstances we have difficulty viewing McCutcheon as valid precedent after Clayton v. Kervick. See also Bulman v. McCrane, supra, 64 N.J. at 113.
Holster v. Board of Trustees, 59 N.J. 60 (1971), dealt with the County College Bond Act. Under that act the county was to issue bonds payable in part from funds contemplated to be obtained from the State. The obligation of the State, however, was expressly subject to appropriations being made. Thus, if there were no appropriation there could be no state liability. The court recognized that there was a strong likelihood that the bonds would be paid in part by the legislative appropriations. Nonetheless, it upheld the statute since there was no legal objection on the part of the State. 59 N.J. at 66-67. The court held that "a projected or anticipated future legislative appropriation is not a present debt or liability. A future legislature is not bound to make the appropriation." 59 N.J. at 71. We believe that L. 1981, c. 120, is on even stronger constitutional ground than the County College Bond Act, upheld in Holster. Under L. 1981, c. 120, it is not contemplated that the Legislature appropriate money to pay the bonds or notes of the Authority. To the contrary, the only appropriation anticipated is for rent, and even that future appropriation is subject to the express reservation that it might not be made.
The significance of the reservation in future Legislatures to appropriate vel non was recently pointed out in Camden v. Byrne, 82 N.J. 133 (1980). There various counties and municipalities challenged the failure of the Governor and Legislature as well as other state officers to appropriate and expend state *73 revenues pursuant to particular statutes which by their terms provide funds for local government uses. The Supreme Court ruled in favor of defendants, in part because the Constitution required that expenditures be made by legislative appropriation. The failure of the Legislature to appropriate money to fund the particular dedications overrode the general laws. L. 1981, c. 120, provides that future payments on the leases be subject to appropriations. There can be no doubt that this reservation is perfectly valid. While certainly we anticipate that future Legislatures will appropriate funds to pay the rentals nevertheless it is not deniable that they will be under no legal compulsion to do so.
Plaintiff contends that the provisions for legislative oversight offend the separation of powers clause of our Constitution. That provision reads:
1. The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution. [N.J.Const. (1947), Art. III]
As already noted, the Legislature in two ways has direct control over the Authority. The Legislature must approve projects if the estimated cost is to exceed $100,000. Further, the presiding officers of each house of the Legislature must approve leases of the Authority. Plaintiff contends that the Legislature may therefore block any project of the Authority. Plaintiff further asserts that the planning, construction and supervision of state facilities is traditionally an executive function.
There is no doubt at all but that both the Executive and Legislative Branches of State Government must cooperate for a project to be completed by the Authority. The Authority itself is an executive entity. The Governor may veto its actions. The Legislature must approve its significant undertakings. Yet this mixing of power in two branches of government by no means is necessarily improper. The Supreme Court has made it clear that the principle of separation of powers does not require a *74 rigid or precise separation in the functions of the different branches of government. Knight v. Margate, 86 N.J. 374 (1981); State v. Leonardis, 73 N.J. 360, 370 (1977). Accordingly, we should focus not on whether two branches of government are involved in the project but whether the Legislature is exercising powers by its oversight which are inherently executive.
Viewed from this perspective it is quite clear that the oversight is entirely proper. The statute, as we have noted, contemplates that the Legislature will annually appropriate funds to pay the rents to the Authority to satisfy its obligations. Absence of legal compulsion to make the appropriations in no sense infers that it is anticipated that they will not be made. Yet the appropriations cannot be compelled. In the circumstances it is entirely reasonable for the Legislature to have reserved to itself oversight over major projects. Surely the Legislature would be more likely to make the appropriation to fund the rent for a project if it had approved the project and if its presiding officers had approved the leases. Accordingly, we view the provision for legislative oversight not as an encroachment on the executive but rather as an adjunct to the Legislature's undisputed power to provide for appropriation of money. The oversight provisions should thus be regarded as an entirely appropriate application of an inherently legislative function. Thus, the constitutional requirement for separation of powers has not been infringed.
We think that Brown v. Heymann, 62 N.J. 1 (1972), is useful in an analysis of whether L. 1981, c. 120 authorizes an impermissible encroachment of the Legislature on the Executive Branch of government. There plaintiffs challenged the constitutionality of the Executive Reorganization Act of 1969. The act authorized the Governor to prepare a reorganization plan for a department of State Government. The plan was to be effective unless within 60 days both houses of the Legislature by concurrent resolution rejected the plan. Plaintiffs asserted that the *75 constitutional prohibition requiring a separation of powers was violated because of the assertedly legislative power delegated to the Governor. The Supreme Court perceived that in Brown the question it should answer is whether "the statute so enhances the executive power as to threaten the security against aggregated power which the separation-of-powers doctrine was designed to provide." 62 N.J. at 10. The court found no such enhancement. A similar approach to L. 1981, c. 120, results in a rejection of plaintiff's contention that the act violates the doctrine of separation of powers. This is because the Legislature had already reserved to itself the right to appropriate or fail to appropriate the annual rentals for the project. In short, the provisions for legislative oversight, while more deeply involving the Legislature in the planning of a project, simply do not enhance its overall power. With or without legislative oversight the Legislature has the power to preclude the Authority from proceeding with a project by declining to appropriate the rental payments.
Plaintiff's final contention is that L. 1981, c. 120, violates N.J.Const. (1947), Art. V, § I, par. 14, which requires that every bill which passes the Legislature be presented to the Governor for approval or disapproval.[3] The thrust of plaintiff's argument is that the resolution has the force of law.
It is possible that in some situations a concurrent resolution might have the force of law and consequently would require presentation to the Governor. In re N.Y., Susquehanna & Western R. Co. Application, 25 N.J. 343 (1957), the Supreme Court suggested that a concurrent resolution is ordinarily an expression of sentiment or opinion, without legislative quality of any coercive or operative effect. 25 N.J. at 348. The court did say that perhaps when a concurrent resolution acquires force by *76 reason of some statute, that it might have a legislative quality. In such circumstances presentation to the Governor could possibly be required because of his constitutional right to participate in the legislative process.
It is certainly not the purpose of this opinion to do anything more than decide the specific case before us. In the context of this case we hold that the concurrent resolution need not be presented to the Governor. We reach this conclusion for two reasons. Firstly, the Governor, without presentation of the concurrent resolution, has the independent power to disapprove a project. He may do this simply by rejecting the minutes of the Authority. Such a rejection would be more significant than a simple disapproval of a bill, for there is no provision in L. 1981, c. 120, to override or circumvent the rejection. N.J.S.A. 52:18A-78.4(i). With respect to legislation, the Governor's veto may be overridden and a bill adopted without his consent. N.J.Const. (1947), Art. V, § I, par. 14. Secondly, what the concurrent resolution really does is to express the sentiment of the Legislature that it approves the project. This enhances the likelihood that the Legislature will appropriate money in the future to fund the projects. The appropriation must, of course, come from legislation. See Camden v. Byrne, supra, 82 N.J. at 145-147. But the Governor retains the power, subject to being overridden, to veto the appropriation. N.J.Const. (1947), Art. V, § I, par. 15. Thus, the Governor has complete power before a project is undertaken to reject the project. And he has power during the period when a lease is in effect to veto funding for a project. In the circumstances, L. 1981, c. 120, by not providing for presentation of the concurrent resolution to the Governor makes no significant encroachment on his powers. Thus we perceive no improper exclusion of him from the legislative process.
The order of dismissal of November 24, 1981 is affirmed.
NOTES
[1] We further note that, notwithstanding plaintiff's contrary assertions, the facts are a matter of undisputable record.
[2] However, McCutcheon might be distinguishable from our case because of the express right reserved in N.J.S.A. 52:18A-78.5(o) to make payment of future rentals subject to appropriations being made from time to time. The statute invalidated in McCutcheon had no such provision.
[3] This section was amended by the electorate in 1981 at the general election, but the amendment is not germane in this action.