720 A.2d 356 (1998)
316 N.J. Super. 245
JERSEY CITY EDUCATION ASSOCIATION, Salvatore Riggi, Mary Revell, Mia Scanga, and Catherine Revell, Plaintiffs-Appellants,
v.
CITY OF JERSEY CITY, Bret Schundler in His Official Capacity as Mayor, the Council of the City of Jersey City, and Jersey City Redevelopment Agency, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1998.
Decided November 4, 1998.
Kenneth I. Nowak, Newark, for plaintiffs-appellants (Zazzali, Zazzali, Fagella & Nowak, *357 attorneys; Mr. Nowak, of counsel and on the brief).
Paul W. Mackey, Jersey City, for defendants-respondents City of Jersey City, Bret Schundler, and the Council of the City of Jersey City (Sean M. Connelly, Corporation Counsel; Joanne Monahan, Asst. Corporation Counsel, of counsel and on the brief).
Francis E. Schiller, Jersey City, for defendant-respondent Jersey City Redevelopment Agency (Schiller, Squeo & Hartnett, attorneys; Mr. Schiller, on the brief).
Before Judges PRESSLER, BROCHIN, and KLEINER.
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiffs, Jersey City Education Association, Salvatore Riggi, Mary Revell, Mia Scanga, and Catherine Revel[1] (collectively "JCEA"), appeal from an order denying their petition seeking injunctive relief designed to bar defendants City of Jersey City ("City"), Bret Schundler in his official capacity as Mayor, the Council of the City of Jersey City, and the Jersey City Redevelopment Agency ("JCRA"), from using a portion of the $32,250,000 proceeds of a sale of municipal bonds for the construction of a community/educational facility which JCEA contends is solely designed to accommodate a charter school. Plaintiffs also appeal from the order dismissing plaintiffs' verified amended complaint.[2] The crux of plaintiffs' first amended complaint is the assertion that the proposed partial use of municipal bond proceeds for defendants' intended purpose violates N.J.S.A. 18A:36A-10.[3] In response to plaintiffs' amended complaint, defendants filed a motion to dismiss, R. 4:6-2(e), contending that plaintiffs' complaint was untimely filed. Additionally, addressing the merits of plaintiffs' complaint and in support of its motion to dismiss, defendants attached an appendix containing four certifications and one affidavit. Plaintiffs responded by filing additional material which they deemed pertinent. Judge Arthur D'Italia concluded that plaintiffs' amended complaint was not timely filed, but that plaintiffs' application for restraints would be denied and its amended complaint dismissed. Pursuant to plaintiffs' motion, we accelerated plaintiffs' appeal.
Although we disagree with the motion judge's conclusion that plaintiffs' complaint was timely, we nevertheless conclude that Judge D'Italia correctly construed N.J.S.A. 18A:36A-10, thus properly denying plaintiffs' request for injunctive relief and dismissing plaintiffs' amended complaint. Although the judge did not specifically state that he was considering the motion to dismiss as a motion for summary judgment, we conclude that his decision, as articulated in his well-reasoned findings of fact and conclusions of law, was predicated on the standard enunciated in Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995). We affirm.[4]

*358 I
In December 1995, the New Jersey Legislature enacted P.L. 1995, c. 426 (N.J.S.A. 18A:36A-1 to -18), the Charter School Program Act of 1995. The Act authorizes the establishment of charter schools as part of the state's program of public education. The Legislature found and declared that establishing charter schools as part of public education can "assist in promoting comprehensive educational reform ... [and] is in the best interests of the students of this State and it is therefore the public policy of the State to encourage and facilitate the development of charter schools." N.J.S.A. 18A:36A-2.
Pursuant to the New Jersey Local Bond Law, N.J.S.A. 40A:2-1 et seq., the City submitted to the Local Finance Board of Local Government Services in the Department of Community Affairs of the State of New Jersey a proposed bond ordinance in the total amount of $32,500,000 (net $30,165,000), to be used for a variety of municipal purposes, among which was the construction of a community/educational facility by JCRA at an anticipated cost of $9,500,000. The proposed building was to be constructed by JCRA, pursuant to a cooperation agreement between the City and the JCRA, in furtherance of the redevelopment purposes delineated in the New Jersey Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 et seq. After a public hearing, review, and approval by the Deputy Attorney General assigned to the Local Finance Board, the purposes and issuance of the proposed bonds were approved on February 11, 1998.
Immediately thereafter, the City, by Ordinance 98-003, adopted a bond ordinance authorizing the bonds for the purposes identified in the submission to the Local Finance Board. On February 13, 1998, the bond ordinance was duly published as required by N.J.S.A. 40A:2-17 and -19.
N.J.S.A. 40A:2-18 specifically provides:
A bond ordinance shall take effect 20 days after the first publication thereof after final adoption. A bond ordinance which authorizes obligations to fund, refund, renew, extend or retire obligations issued or authorized pursuant to this chapter, or notes or bonds issued or authorized pursuant to any act of which this chapter is a revision shall not be subject to referendum.
After the expiration of this twenty-day period of limitation, the following conclusive presumptions shall be made concerning the adopted ordinance: 1) the accuracy, correctness and sufficiency of any annual or supplemental debt statement filed; 2) any statements of fact contained in the ordinance; 3) determinations in the ordinance as to the purposes for which the obligations are authorized; 4) the due and regular introduction, publication, final passage and adoption of the ordinance; and 5) "the compliance with the provisions of this chapter and every other law of such ordinance and all matters in connection therewith, and the issuance of obligations authorized thereby or pursuant thereto by the local unit." N.J.S.A. 40A:2-49.
Failing to object before the expiration of the twenty-day period of limitation has the following effect:
The local unit and all other persons interested shall forever be estopped from denying that such ordinance or its final adoption or issuance of obligations thereunder do not comply with the provisions of this and every other law, or from questioning in any manner the validity of such ordinance or any obligations issued thereunder in any action or proceeding *359 commenced after 20 days shall have elapsed from publication of such ordinance after final passage.

[N.J.S.A. 40A:2-49.]
As part of its motion to dismiss, relying upon N.J.S.A. 40A:2-49, defendants asserted that plaintiffs' complaint was untimely filed. Although defendants orally argued this same point in the Law Division, the motion judge, relying on Watters v. Mayor of Bayonne, 89 N.J.Eq. 384, 104 A. 770 (Ch.1918), rejected defendants' contention. The judge concluded that plaintiffs' amended complaint challenged the "use" of the funds derived from the issuance of the bonds, rather than the enactment of the bond ordinance, and as such the statutory time constraints were inapplicable.
As noted correctly by defendants, Watters is not binding precedent, yet the motion judge found Watters persuasive. In Watters, the plaintiffs sought to enjoin the City of Bayonne from purchasing a water works system at an allegedly excessive price. Id. at 385, 104 A. 770. Bayonne defended on the ground that more than twenty days had elapsed since the publication of the ordinance permitting the issuance of the bonds. Ibid.[5] Bayonne's argument was rejected by the chancellor.
Although Watters is the sole judicial precedent construing this particular statute, it predates the reality of modern municipal bond practice. The pendency of a suit after the passage of a municipal bond ordinance prevents a city or its bond counsel from representing to the public that the proceeds of the bond will be used for the public purposes designated within the bond ordinance.[6] The approval of a municipal bond ordinance and the complexities of preparing for the sale of municipal bonds must have the benefit of the repose arising from a statutory time-bar on continued litigation. As noted, N.J.S.A. 40A:2-49 creates "conclusive " presumptions. Id. (emphasis added). We have previously recognized the effect that litigation may have upon governmental agencies' intended sale of bonds. See Enourato v. N.J. Building Authority, 182 N.J.Super. 58, 440 A.2d 42 (App. Div.1981), aff'd, 90 N.J. 396, 448 A.2d 449 (1982). In Enourato, we noted that plaintiff's complaint threatened to derail the $135,000,000 bond issue dedicated primarily to the construction principally of state agency facilities, pursuant to N.J.S.A. 52:18A-78.1 et seq., and that plaintiff's complaint interfered with defendants' calculated decision that the appropriate time to sell the bonds had arrived. Id., 182 N.J.Super. at 68, 440 A.2d 42.
We thus conclude, despite Watters, that the motion judge improvidently ignored the conclusive presumption of regularity embodied in N.J.S.A. 40A:2-49. Defendants were entitled to dismissal of plaintiffs' amended complaint predicated upon the statutory time-bar.
Even if our interpretation of N.J.S.A. 40A:2-49 is erroneous, we conclude that dismissal of plaintiffs' amended complaint was proper as the construction of the proposed community/educational facility does not violate N.J.S.A 18A:36A-10, which provides:
A charter school may be located in part of an existing public school building, in space provided on a public work site, in a public building, or any other suitable location. The facility shall be exempt from public school facility regulations except those pertaining to the health or safety of the pupils. A charter school shall not construct a facility with public funds.
The issue was framed in two paragraphs within plaintiff's amended complaint:

*360 33. The use of bonds issued and backed by the City is a ruse intended and designed to evade and avoid the clear intent of N.J.S.A. 18A:36A-10, prohibiting the use of public funds for the construction of charter school facilities.
35. The use of public monies for the purpose of building a public school building is illegal, unconstitutional and preempted.
After considering the briefs filed by the parties and the arguments of counsel, Judge D'Italia concluded:
It is clear from the statute that a municipality may make available an existing public building for the use of a charter school. It is difficult to fathom why if a municipality may dedicate space "in a public building", presumably even the entirety of a public building to a charter school, it may not construct a multi-use building and allow a portion thereof to be leased for educational purposes by a charter school. The statute does expressly bar a charter school from constructing a facility with public funds. However, the statute does not say that no public funds shall be used to construct a facility to house a charter school, which language was readily available to the legislature had that been its intendment. The statute does not limit charter schools to finding space in existing public buildings, thus there is no implied bar in the legislative language to the construction of a new public building and the subsequent leasing of space to a charter school. Whether that is a wise use of taxpayer funds is a matter for the governing body and ultimately for the voters of the municipality. That is not an issue to be decided by this Court.
We agree. It is amply clear that here a charter school is not constructing a facility with public funds, an act which is specifically prohibited by N.J.S.A. 18A:36A-10. The certifications and affidavit filed by defendants clearly demonstrate that the proposed community/education facility, which will be used, in part, by a proposed charter school, will not be owned by the charter school. The charter school will lease the future facility, as any other commercial tenant, at fair rental market value. Plaintiffs did not offer any contradictory certification to defendants' submissions.
Although defendants filed a motion to dismiss, R. 4:6-2(e), that rule provides in part:
If, on a motion to dismiss based on [failure to state a claim], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46, and all parties shall be given reasonable opportunity to present all materials pertinent to such a motion.
Thus, a motion to dismiss under R. 4:6-2(e) is effectually converted into a motion for summary judgment when the court relies on facts beyond the pleadings. See Pressler, Current N.J. Court Rules, comment 4.1 on R. 4:6-2(e) (1998). The submission of documents in addition to the pleadings converts a motion to dismiss for failure to state a claim into a motion for summary judgment. National Amusements, Inc. v. New Jersey Turnpike Auth., 261 N.J.Super. 468, 470-71, 619 A.2d 262 (Law Div.1992), aff'd, 275 N.J.Super. 134, 645 A.2d 1194 (App.Div.), certif. denied, 138 N.J. 269, 649 A.2d 1288 (1994); see Intili v. DiGiorgio, 300 N.J.Super. 652, 655 n. 2, 693 A.2d 573 (Ch.Div.1997) (noting plaintiff's submission of a certification acted to convert defendant's motion to dismiss into a motion for summary judgment).
Once having reviewed defendants' certifications and affidavit, and having considered plaintiffs' responsive submissions, Judge D'Italia properly considered defendants' motion as a motion for summary judgment pursuant to R. 4:46. Although he did not expressly so state, it is abundantly clear from his articulated reasons that Judge D'Italia found no genuine issue of material fact that would warrant discovery or a plenary hearing. Rule 4:46-2 dictates that a court should deny summary judgment only where the party opposing the motion has come forward with evidence that creates a "genuine issue with respect to a material fact challenged." Brill v. Guardian Life Ins. Co., 142 N.J. at 523, 666 A.2d 146. Here, the judge concluded that the provisions of the Charter School Program Act, and particularly, N.J.S.A. *361 18A:36A-10, were clear and precise, thus permitting the construction of a public building designed as a community/educational facility to be leased, in part, to an anticipated charter school at fair rental market value. Having reached that conclusion, we find it unnecessary to specifically address plaintiffs' additional allegations asserted in paragraph 35 of its complaint that "[t]he use of public monies for the purpose of building a public school building is illegal, unconstitutional and preempted."
Affirmed.
BROCHIN, J.A.D. (concurring).
I concur in the court's affirmance of the Law Division's dismissal of plaintiffs' complaint. But I do so only because I agree with my colleagues that N.J.S.A. 40A:2-49 bars plaintiffs' tardy challenge to the use of the proceeds from the sale of municipal bonds.
However, I respectfully disagree with the majority's conclusion that dismissal of plaintiffs' complaint is also justified on the ground that construction of the proposed facility does not violate N.J.S.A. 18A:36A-10. In my view, that statutory section, which was very likely the product of a legislative compromise, is a somewhat grudging concession that although no public funds may be used for charter schools, such schools may be accommodated in surplus space, if any can be found, in existing public buildings. That is the only interpretation of N.J.S.A. 18A:36A-10 that does not ignore the admonition of the last sentence of the section, "A charter school shall not construct a facility with public funds."
We are reviewing an order granting summary judgment. Plaintiffs allege, with substantial support in the record, that the facility which is the subject of the present controversy would not be built if it were not to be used for a charter school. If N.J.S.A. 40A:2-49 did not bar plaintiffs' challenge, the applicable standard of review would require us to assume the truth of that allegation. In my view, the use of public funds to construct a building which will be used by a charter school and which would not be constructed if it were not needed by the charter school is prohibited by N.J.S.A. 18A:36A-10. Consequently, although I concur in the result reached by the court, I am unable to join in its opinion.
NOTES
[1] The individual plaintiffs are identified as taxpayers and residents of the City of Jersey City.
[2] When plaintiffs filed their initial complaint they also sought an order to show cause with temporary restraints. Although the request for temporary restraints was denied, the motion judge executed the order to show cause requiring defendants to show cause why an injunction should not issue enjoining defendants from issuing and selling municipal bonds. Defendants were also granted leave to move to dismiss plaintiffs' verified complaint as permitted by R. 4:6-2(e). Prior to the short return date, April 3, 1998, plaintiffs filed an amended complaint. It modified its requested relief and sought only to enjoin the "use" of the bond sale proceeds for the purposes delineated in defendants' bond ordinance, but no longer sought to enjoin the sale of the bonds authorized by the bond ordinance.
[3] Plaintiffs also contend, both in response to defendants' motion to dismiss and again on appeal, that the Thorough and Efficient Clause of the New Jersey Constitution, the Charter School Program Act, specifically N.J.S.A. 18A:36A-10, and the general scheme of Title 18A preclude the City of Jersey City from issuing municipal bonds for defendants' intended purpose. We need not consider plaintiffs' argument, as the municipal bond ordinance was not enacted solely to accomplish defendants' purpose. The municipal bond ordinance was designed to provide funding for various municipal projects, including a redevelopment project in conjunction with defendant JCRA.
[4] Although defendants argued that plaintiffs' complaint was properly dismissed because plaintiffs failed to exhaust their administrative remedies by an appeal from the decision of the Local Finance Board approving the bond sale, we need not address that argument as we conclude that plaintiffs' complaint was untimely under N.J.S.A. 40A:2-49 and that the motion judge properly interpreted N.J.S.A. 18A:36A-1 et seq. We particularly note that although plaintiffs' original complaint sought to enjoin the bond sale, their amended complaint merely sought to enjoin the partial intended use of the bond proceeds. The Local Finance Board was not called upon to approve the varied uses of the bond sale. Under these circumstances, exhaustion of administrative remedies would have been futile. Additionally, we may waive any of the requirements that a party exhaust administrative remedies in the "interests of justice." Brunetti v. Borough of New Milford, 68 N.J. 576, 589, 350 A.2d 19 (1975). See also Pressler, Current N.J. Court Rules, comment 7 on R. 4:69-6 (1998) (discussing cases that analyze "interest of justice" factors).
[5] The controlling statute in Watters was L. 1916, c. 252, p. 525 (2V281-2V283). The provisions of that statute are substantially similar to N.J.S.A. 40A:2-49.
[6] As an example, defendant certifies, without substantial delineation, that under the Internal Revenue Code of 1986, as amended, the City must submit a Certificate of Arbitrage and Use of Proceeds, stating that it has a reasonable expectation to use the proceeds of the sale of municipal bonds for the described purposes. An untimely filed complaint challenging the use of bond proceeds impedes a City's compliance with the Code.

We also may take judicial notice that litigation affects the sale of municipal bonds. Prospective bond purchasers are entitled to knowledge of litigation prior to the date of the sale of municipal bonds.