766 A.2d 761 (2001)
337 N.J. Super. 76
Robert KLIER, Sr. and Marianne Klier, husband and wife, Plaintiffs-Appellants,
v.
SORDONI SKANSKA CONSTRUCTION COMPANY, a Delaware Corporation, A.G. Mazzocchi, Inc. (for Discovery Purposes only), The Taubman Company (for Discovery Purposes only), The Prudential Realty Company (for Discovery Purposes only), Hobbs & Black Associates (for Discovery Purposes only) and Short Hills Associates (for Discovery Purposes only), Defendants-Respondents,
and
Sordoni Skanska Construction Company, a Delaware Corporation, Third-Party Plaintiff,
v.
A.G. Mazzocchi, Inc., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2000.
Decided January 26, 2001.
*762 Sidney Shaievitz argued the cause, Bloomfield, for appellants (Shaievitz & Berowitz, attorneys; Mr. Shaievitz, on the brief).
Daniel K. Newman argued the cause, West Orange, for respondent Sordoni Skanska Construction Company.
Respondents A.G. Mazzocchi, Inc., The Taubman Company, The Prudential Realty Company, Hobbs & Black Associates and *763 Short Hills Associates have not filed a brief.
Before Judges KEEFE, EICHEN[1] and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Plaintiffs, Robert Klier, Sr. and Marianne Klier,[2] his wife, appeal from an order dismissing their complaint with prejudice as to defendant Sordoni Skanska Construction Company (defendant or Sordoni) "for failure to state a cause of action against defendant," and from the denial of their subsequent motion seeking to vacate the prior order and restore the case to the trial list. They also appeal from a previous interlocutory order that denied their application to have unrestricted ex parte communications with all former employees of A.G. Mazzocchi, Inc. (Mazzocchi), Charles Imbimbo, George Daniel and Robert Gordon, without the express consent of defendants' attorney. We reverse each order and remand for further proceedings.
This case arises out of a construction site accident. In January 1993, defendant entered into a contract with Prutaub Joint Venture, the owner of the mall at Short Hills, for demolition, asbestos removal, remodeling and expansion, preparation of three department store pads and the addition of three parking decks. In March 1993, defendant entered into a subcontract with Mazzocchi for certain demolition work.
On January 11, 1994, the day of the accident that led to this lawsuit, plaintiff was a laborer employed by Mazzocchi. He had been hired out of Laborer's Local Union 526. Although he had previously worked at the site for other subcontractors of Sordoni, it was his first day on the job for Mazzocchi. Plaintiff and Gordon, a laborer from the same union and local, were directed to report to Imbimbo, who was Mazzocchi's foreman. They were joined by Daniel, a carpenter hired out of Carpenter's Union Local 620 by Mazzocchi about a week and one-half before the accident. Plaintiff, along with Gordon, Daniel and Imbimbo were demolishing a large overhang or canopy on the south side of Bloomingdale's Department Store.[3] The underside of the canopy was lath and mortar, with connection stringers wired to structural components. The demolition procedure involved the cutting of each wire and the use of wrecking bars, a sawsall, lump hammers and a two-by-four to pry away the soffit.
When the soffit was loose, partly lying on the ground, Imbimbo told plaintiff, Gordon and Daniel to remove tools that were lying under it. While they were doing so, and while plaintiff and Gordon were under the canopy, Imbimbo, without warning, started prying at the attached soffit with an eight or ten-foot two-by-four. The soffit suddenly broke loose and fell, hitting plaintiff, causing him to sustain serious personal injuries.
The case was scheduled for trial on September 29, 1998. On that date, immediately prior to trial, the judge to whom the case had been assigned stated that he had "serious concerns about the cause of action." Noting that the case would take approximately two weeks to try, the judge said, "[i]t seems to me that it would be good administration to determine whether there is a cause of action. At least in my view." The judge stated that he recognized that he could require the plaintiff to present his case, and, if there was a motion at the conclusion of plaintiff's case, he *764 would "accept the truth of oral statements made on behalf of the plaintiff and ... draw all inferences which may reasonably be drawn against the motion to dismiss." He proposed to "shortcut that procedure and to have [plaintiff's attorney] put on the record the best case that he hopes to produce here. And I will apply the rule that Ithat is applied at the conclusion of the plaintiff's case which I have already enunciated. And I will hear argument and make a determination as to whether or not, in my view, there is something which should go to the jury."
The judge said that he had used that procedure before and he felt, "[i]t is good administration from the judicial point of view. I also think it is good from the parties' point of view," since the trial would be long and expensive.
Although there appears to have been a discussion in chambers, off the record, regarding the procedure proposed by the judge, on the record plaintiff's attorney began to state his case without objection to the procedure. However, in the course of his argument, he stated that he was not "prepared to argue this motion" because he had not brought his file or the report of his expert. The argument was postponed to afford counsel an opportunity to prepare, and to submit his expert's report. On October 1, 1998, after hearing further argument, the motion judge refused to hold defendant, the general contractor, liable for the "egregiously stupid" act of Imbimbo, who was an employee of Mazzocchi, the subcontractor, who caused the canopy to collapse by prying at its soffit.
Plaintiffs filed a motion seeking reconsideration, supported by a supplemental engineering report. The judge heard oral argument on the motion, and noted that, "It strikes me that this [report] ... is a net opinion." The judge reserved decision and, without any further opinion, later entered an order denying the motion.
On this appeal, plaintiffs raise the following arguments:
POINT I THE TRIAL COURT'S PROCEDURE IN INITIATING AND CONDUCTING, SUA SPONTE, A PROCEDURE TO DISMISS PLAINTIFFS' CASE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WAS IMPROPER AND IS GROUNDS FOR REVERSAL
POINT II PLAINTIFFS' LIABILITY EXPERT'S REPORT AND SUPPLEMENTAL REPORT DID NOT CONSTITUTE NET OPINIONS
POINT III THE DISMISSAL OF THIS SUIT FOR FAILURE TO STATE A CAUSE OF ACTION SHOULD BE REVERSED WHERE:
A. THE RISK OF INJURY TO KLIER WAS REASONABLY FORESEEABLE
B. THE RELATIONSHIP OF THE PARTIES IMPLICATED WORKPLACE SAFETY CONCERNS
C. THERE WERE VIOLATIONS OF OSHA SAFETY REGULATIONS WHICH PROXIMATELY CAUSED PLAINTIFF'S ACCIDENT
D. THERE WERE OPPORTUNITIES TO TAKE CORRECTIVE MEASURES
E. THERE WERE VIOLATIONS OF SAFETY CODES AND STANDARDS WHICH PROXIMATELY CAUSED PLAINTIFF'S ACCIDENT
F. NEGLIGENT INSPECTION BY SORDONI WAS A PROXIMATE CAUSE OF PLAINTIFF'S ACCIDENT
G. SORDONI, AS THE SINGLE REPOSITORY OF RESPONSIBILITY FOR THE SAFETY OF ALL WORKERS ON THE PROJECT, HAD A NON-DELEGABLE DUTY TO MAINTAIN A SAFE WORKPLACE AND BORE RESPONSIBILITY FOR ALL OSHA VIOLATIONS *765 ON THE JOB; VIOLATION OF AN OBLIGATION IMPOSED BY OSHA PERTAINING TO SAFETY SUPPORTS A TORT CLAIM
POINT IV PLAINTIFFS' COUNSEL SHOULD HAVE UNRESTRICTED ACCESS TO ALL PRESENT AND FORMER EMPLOYEES OF MAZZOCCHI NOT REPRESENTED BY COUNSEL
We first consider plaintiffs' contention that the trial judge erred in sua sponte instituting the summary procedure and dismissing their complaint. We agree. Our rules of court must be "construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2. The cornerstone of our judicial system is that justice is the polestar and the procedures utilized by the courts must "be moulded and applied with that in mind." N.J. Highway Authority v. Renner, 18 N.J. 485, 495, 114 A.2d 555 (1955). Our ultimate goal is not, and should not be, swift disposition of cases at the expense of fairness and justice. Rather, our ultimate goal is the fair resolution of controversies and disputes. R.H. Lytle Co. v. Swing-Rite Door Co., Inc., 287 N.J.Super. 510, 513, 671 A.2d 602 (App. Div.1996). Eagerness to move cases must defer to our paramount duty to administer justice in the individual case. Audubon Volunteer Fire Co. No. 1 v. Church Constr. Co., 206 N.J.Super. 405, 406, 502 A.2d 1183 (App.Div.1986). Stated another way, while the concepts of "judicial administration" and fairness are not necessarily incompatible, the desire to facilitate judicial administration must take a back seat to our primary goal which is to adjudicate cases fairly and impartially. Shortcuts should not be utilized at the expense of justice.
The minimum requirements of due process of law are notice and an opportunity to be heard. Doe v. Poritz, 142 N.J. 1, 106, 662 A.2d 367 (1995). The opportunity to be heard contemplated by the concept of due process means an opportunity to be heard at a meaningful time and in a meaningful manner. Ibid. Indeed, our rules of court contemplate that motions be made in writing. R. 1:6-2(a). Moreover, ordinarily, motions must be filed and served not later than sixteen days before a specified return date. R. 1:6-3(a). Our summary judgment rule requires a motion seeking that relief to be filed not later than twenty-eight days before the time specified for the return date. R. 4:46-1. In addition, a party seeking summary judgment must file a brief and, at the very minimum, a statement of material facts in support of the motion. R. 4:46-2(a). The purpose of these rules is obvious, that is, to afford the party against whom relief is sought notice of the application, together with a meaningful opportunity to respond. The procedure resorted to by the trial judge in this case defeated those purposes. For example, had defendants filed a motion, plaintiffs would have had the opportunity to respond to the objection to their expert's opinion. Instead, plaintiff came to court prepared to pick a jury, but rather, was required to defend a motion, brought by the court sua sponte, to dismiss his complaint.
We recognize that the judge gave plaintiffs' attorney two days to produce his expert's report and further argue against the motion.[4] We conclude that that opportunity was insufficient to remedy the defect in the judge's procedure. Had plaintiffs' attorney been given sufficient advance notice of the application for dismissal, he would have had a meaningful opportunity to contact his expert and supply a supplemental report, as he did on his motion for reconsideration. We cannot condone a procedure whereby a judge sua sponte, without notice to a party, resorts to a "shortcut" for the purposes of "good administration" and circumvents the basic *766 requirements of notice and opportunity to be heard.
Defendants' reliance on Enourato v. New Jersey Building Authority, 182 N.J.Super. 58, 440 A.2d 42 (App.Div.1981), aff'd, 90 N.J. 396, 448 A.2d 449 (1982), is misplaced. Although we held in Enourato that a Law Division judge has the power to dismiss a case on the same day the complaint was filed, we also observed that "only an extraordinary situation could justify such a procedure." Enourato, supra, 182 N.J.Super. at 64-5, 440 A.2d 42. We cautioned that "[o]rdinarily a trial judge should not dismiss an action as summarily" as was done in that case. Id. at 64, 440 A.2d 42. Only because the situation before the judge was truly emergent in nature, coupled with the public importance of the question involved, including the large amount in controversy, did we conclude that the trial judge properly exercised his discretion in dismissing a complaint challenging legislation establishing the New Jersey Building Authority that threatened a proposed bond sale the next day. Id. at 65-66, 440 A.2d 42. Simply put, we conclude that the mere fact that the trial in this case may be long and expensive is not an extraordinary situation justifying the summary procedure instituted by the judge.
We next consider defendants' contention that plaintiffs' attorney consented to the procedure adopted by the judge. While this appeal was pending, based upon conflicting affidavits and certifications of opposing counsel as to whether plaintiffs' attorney consented to the procedure, we "remanded to the trial court for the purpose of resolving the issue of whether plaintiffs' attorney consented to the procedure followed by the trial court." We intended that the remand proceeding be conducted by the same judge who originated the procedure. Instead, the remand was presided over by a different judge who reviewed the transcripts, and the conflicting certifications and concluded that plaintiffs' attorney implicitly consented to the proceedings by failing to voice an objection. We disagree. Initially, at the very least, in light of the conflicting certifications and affidavits the judge should have conducted a plenary hearing. However, we decline to remand at this time for a plenary hearing. To do so would give our tacit approval to the procedure utilized. In addition, we are persuaded by the certification of plaintiffs' attorney that the judge "did not request consent; he merely explained what he was about to do and we then proceeded to the courtroom to go on the record. It was not for me to consent or protest." Plaintiffs' attorney was placed in a difficult position in light of the unorthodox procedure utilized by the judge, and, under these circumstances, we decline to hold that he tacitly consented to this procedure.
We also note that the prior remand was necessitated, in part, because there appeared to be an unrecorded discussion in the judge's chambers regarding the procedure proposed by the judge. We have previously noted that "[c]ounsel and the trial judge have a mutual obligation to make a record and to request and provide for the record a notation of events occurring in chambers, either by way of actual transcript, or summarization on the record so that a reviewing court will have the benefit thereof." State v. Green, 318 N.J.Super. 361, 380, 724 A.2d 254 (App. Div.1999), aff'd. o.b. 163 N.J. 140, 747 A.2d 1234 (2000), citing Fehnel v. Fehnel, 186 N.J.Super. 209, 217, 452 A.2d 209 (App. Div.1982). While we recognize that it is impractical to require a record, or transcript of mundane, innocuous in-chambers discussions, we hold that when the discussion concerns important subjects such as the procedure to be utilized, a record must be made or a summary placed on the record as to what transpired in chambers. Only then is effective appellate review insured.
We next consider plaintiffs' contention that the motion judge erred in *767 denying their motion to allow ex parte communication with Imbimbo, Gordon and Daniel, who were former employees of Mazzocchi, without notice to counsel for defendant. The motion judge concluded that the acts of the employees could be imputed to Mazzocchi, and, in turn to defendant, as the general contractor, under agency principles; and also concluded that they "may have been significantly involved in the determination of [Mazzocchi's] legal position," and their involvement "was greater than simply eyewitnesses to the accident" since "they were actively involved in the work ... which gave rise to the events in question...."
The standard for an attorney's communication with a person represented by counsel is set forth in R.P.C. 4.2, which provides, in pertinent part, as follows:
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter, including members of the organization's litigation control group as defined by R.P.C. 1.13, unless the lawyer has the consent of the other lawyer.
The rule governing representation by an attorney when the client is an organization is set forth in R.P.C. 1:13(a), which provides, in pertinent part, as follows:
For the purposes of R.P.C. 4.2 ... the organization's lawyer shall be deemed to represent not only the organizational entity but also the members of its litigation control group. Members of the litigation control group shall be deemed to include current agents and employees responsible for, or significantly involved in, the determination of the organization's legal position in the matter whether or not in litigation, provided, however, that "significant involvement" requires involvement greater, and other than, the supplying of factual information or data respecting the matter. Former agents and employees who were members of the litigation control group shall presumptively be deemed to be represented in the matter by the organization's lawyer but may at any time disavow such representation.
In seeking access to Imbimbo, Gordon and Daniel, plaintiffs assert that they are fact witnesses, and are not members of an organization's litigation control group. Defendant counters that plaintiffs should not be permitted access to Imbimbo, Gordon and Daniel because the statements of these witnesses could be imputed to Mazzocchi for the purpose of liability.[5] The judge determined that under "traditional agency principles" the acts of Imbimbo, Gordon and Daniel "conceivably" could have been imputed to Mazzocchi.[6] The judge concluded that there was "a very genuine factual issue as to the risk of imputed liability to Mazzocchi as a result of the actions taken by Imbimbo, Cooper[7] and Daniel at the scene on that particular occasion." The judge then determined that Imbimbo and Cooper [sic], "were or may have been significantly involved in the determination of [Mazzocchi's] legal position in this matter, that their involvement... was greater than simply eyewitnesses to the accident, that they were actively *768 involved in ... the demolition work ... which gave rise to ... the injuries to the plaintiff." He then determined that there was "a reasonable basis to conclude that [defendant] may be held ... liable along with [Mazzocchi] for the acts or omissions of the employees of [Mazzocchi], and thereby the acts or omissions of the employees of [Mazzocchi] are imputable to [defendant]." Without providing any legal analysis, he ultimately concluded that Imbimbo, Gordon and Daniel, as former employees of Mazzocchi, "shall be deemed to be part of the litigation control group of Mazzocchi and of [defendant]." The record on plaintiff's motion consisted of a certification of his attorney stating that Grace Mazzocchi had advised the attorney that it had terminated Imbimbo and that Gordon had also left the company. The attorney further certified that at their depositions, Imbimbo and Gordon were not represented, and Imbimbo stated that he was not represented by an attorney.
Prior to 1996, R.P.C. 4.2 provided as follows:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
In 1993, the Supreme Court, when called upon to interpret that rule, elected to refer the question of which organizational employees should be accessible to opposing counsel to a special committee to "fully assess the policy implications" in varied contexts. In the Matter of Opinion 668 of the Advisory Comm. on Prof'l. Ethics, 134 N.J. 294, 303-04, 633 A.2d 959 (1993). The Special Committee on R.P.C. 4.2 issued its report on March 20, 1995, Rep. of Special Committee Rep. on R.P.C. 4.2, 139 N.J.L.J. 1161, 1193 (1995) (Committee Rep.) After the Committee rendered its report, R.P.C. 1.13, 4.2 and 4.3 were amended, effective September 1, 1996. The amendments reflected the recommendations made by the Committee. Michaels v. Woodland, 988 F.Supp. 468, 470 (D.N.J.1997).
The current rules prohibit communication only with employees who are members of the organization's litigation control group, or are represented by another lawyer in the matter. R.P.C. 4.2. This is in accord with the Committee's recommendation that the prohibition against ex parte communication should not extend to employees who were only fact witnesses or involved with the subject matter of the litigation. Committee Rep., supra, 139 N.J.L.J. at 1195-96. The Committee explained that extending the prohibition against ex parte communication to employees who were only involved in the subject matter of the litigation would include too many people "whose interests are most likely not only not congruent with the organization's but also, in many cases, in conflict with it." Ibid. (quoted in Michaels, supra, 988 F.Supp. at 471). The Committee determined that the bar against ex parte communications should only apply in those situations where the employee is not only a fact witness, but also is significantly involved in determining the organization's legal position as opposed to merely supplying information. Committee Rep., supra, 139 N.J.L.J. at 1195-96. In its recommendation, the Committee specifically provided that "[s]ignificant involvement requires involvement greater than merely supplying factual information regarding the matter in question." Id. at 1195. Moreover, in its comment on proposed R.P.C. 1:13, the Committee specifically noted that the bar "does not include persons whose actions bind the organization or are imputable to the organization or who are responsible for other aspects of organizational policy unless they meet the `legal position' test." Committee Rep., supra, 139 N.J.L.J. at 1196.
Thus, the first determination that must be made by a court in considering whether to allow ex parte interviews of current and former employees of an organization *769 is whether the witness is a current or former employee. R.P.C. 1:13(a); Michaels, supra, 988 F.Supp. at 472. If the witness is a current employee, the judge must determine whether the person is within the litigation control group as defined by R.P.C. 1:13(a), and, if not, whether the person has obtained other representation. R.P.C. 4.2; Michaels, supra, 988 F.Supp. at 472. R.P.C. 4.2 prohibits an adverse attorney from having ex parte contact with any current employee who is within the litigation control group. Ibid. On the other hand, if the current employee is not within the litigation control group and has not obtained other representation, ex parte contact is permitted consistent with R.P.C. 4.2 and R.P.C. 4.3. In addition, a former employee who was within the litigation control group is presumptively represented by the organization. R.P.C. 1:13(a); Michaels, supra, 988 F.Supp. at 472. However, pursuant to R.P.C. 1.13(a) and R.P.C. 4.2, the lawyer may interview a former employee who was within the litigation control group, if he or she disavows that representation. Hence, nothing in the Rules prohibits ex parte communication with a former employee who was not within the litigation control group and who was not otherwise represented by counsel. Michaels, supra, 988 F.Supp. at 472.
As previously noted in footnote four of this opinion, the record on appeal does not include the certification of defendant's attorney filed in opposition to the motion. We assume that it did not assert that Imbimbo, Gordon and Daniel were members of defendant's litigation control group, since defendant does not argue in its appellate brief that they were members of the litigation control group. The judge, in generally concluding that they "were or may have been significantly involved in the determination of [Mazzocchi's] legal position in this matter" did not make findings of fact or state his legal conclusions that flowed from those factual determinations. See R. 1:7-4(a) (The judge, in deciding a motion that is appealable as of right, must find the facts and state his conclusions of law thereon).
Since defendant does not contend on appeal that Imbimbo, Gordon and Daniel were members of its or Mazzocchi's litigation control group, we limit our consideration to defendant's contention that ex parte contact is prohibited since the acts of Imbimbo, Daniel and Gordon could be imputed to defendant. In support of that position, defendant relies upon Pub. Serv. Elect. & Gas Co. v. Associated Elec. & Gas Ins. Services, Ltd., et al., 745 F.Supp. 1037 (D.N.J.1990) and Erickson v. Winthrop Laboratories, 249 N.J.Super. 137, 592 A.2d 33 (Law Div.1991). We conclude that those authorities are inapposite in light of the fact that they were decided before the amendments to the R.P.C.'s. Accordingly, to the extent they hold that the court must consider whether the acts of former employees could be imputed to the corporate employer, they have been superseded by the amendments. "The fact that an agent or employee may impute liability, in and of itself, does not determine whether he or she is represented by the organization's counsel, thus implicating the ex parte communication bar." Committee Rep., supra, 129 N.J.L.J. at 1196. In addition, we conclude that the motion judge incorrectly relied on Curley v. Cumberland Farms, Inc., 134 F.R.D. 77 (D.N.J.1991), because that case was also decided before the 1996 Rule amendments, and involved consideration of agency principles.
The record presented to us on appeal does not permit a definitive conclusion as to whether Imbimbo, Daniel and Gordon are, or were, members of the litigation control group. In addition, the judge has not provided sufficient findings of fact and conclusions of law which allows us to review his conclusion that they "were or may have been significantly involved in the determination of [Mazzocchi's] legal position." Moreover, as previously noted, the judge incorrectly determined that ex parte interviews were prohibited because the *770 acts of Imbimbo, Gordon or Daniel may ultimately be imputed to Mazzocchi or defendant. Accordingly, we reverse the interlocutory order, and remand for further proceedings. At the remand proceedings, the judge must determine whether the specific person sought to be interviewed is a current employee. If the person is a current employee, the judge must determine whether the person is within the litigation control group, and, if not, whether the person has obtained other representation. If the person has obtained other representation, obviously an ex parte interview is not permitted.
On the other hand, if the current employee is not within the litigation control group and has not obtained other representation, ex parte contact is permitted consistent with R.P.C. 4.3. If plaintiff's attorney seeks to interview a former employee who was within the litigation control group, that person is presumptively represented by the organization and plaintiff's attorney, pursuant to R.P.C. 4.2, may not interview the person unless that person has disavowed that representation. If the person sought to be interviewed is a former employee who was not within the litigation control group, and is not otherwise represented by counsel, ex parte communication is to be allowed. Finally, the mere fact that liability may be imputed to the corporation by virtue of the act of the present or former employee does not mean that the employee may not be interviewed so long as the employee is not or was not a member of the litigation control group and is not represented by counsel.
Although not raised by the parties, we deem it appropriate to comment on the procedure utilized by plaintiff's attorney in seeking judicial approval prior to attempting to contact Imbimbo, Gordon or Daniel. We do not suggest or imply that when an attorney seeks to conduct an ex parte interview with a current or former employee of an adversary, notice to the adversary or judicial approval is required. Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 77 (D.N.J.2000). An attorney may contact a current or former employee ex parte in an effort to determine whether that person is represented by counsel, or is included in the organization's litigation control group. R.P.C. 4.2; Andrews, supra, 191 F.R.D. at 77. At that point, the attorney must exercise reasonable diligence and attempt to determine whether the person is represented, or is a member of the litigation control group. R.P.C. 4.2. In addition, the attorney must comply in all respects with R.P.C. 1.13, R.P.C. 4.2 and R.P.C. 4.3. However, we remand in this case because here, plaintiff sought judicial approval prior to attempting to contact Imbimbo, Gordon or Daniel.
In light of our conclusion that the summary proceeding instituted by the trial judge sua sponte was improper and necessitates a reversal of the order dismissing plaintiff's complaint for failure to state a claim upon which relief may be granted, we do not reach the arguments raised by plaintiff in Points II and III of his brief. Our decision not to consider those issues should not be viewed as an indication as to how we perceive the merits of those claims, or the position taken by the trial judge.
Reversed and remanded for further proceedings not inconsistent with this opinion. In light of our disposition of this appeal, we need not consider the contention raised in plaintiff's reply brief to this court asking that we strike defendants' brief due to the inclusion "of documents not in the record below and of misrepresentations of the record."
NOTES
[1] Judge Eichen did not participate in oral argument. However, the parties consented to her participation in the decision.
[2] Marianne Klier's claim is a derivative per quod claim. Accordingly, all references to plaintiffs in this opinion shall refer to Robert Klier, Sr.
[3] The description of the accident was taken from the report of plaintiff's engineer, William Poznak. The record contains no eyewitness account of the accident.
[4] In that two day period, a religious holiday intervened.
[5] In opposition to the motion, apparently defendants' attorney filed a certification dated December 27, 1996. Unfortunately, and contrary to R. 2:6-1(a)(1)(H), plaintiffs' attorney has not included that certification in his appendix. If defendants' attorney considered that certification necessary to the proper consideration of the issues, he could have included it in his appendix. R. 2:6-3. He has not done so. We note that the motion judge did not refer to the certification in determining the motion.
[6] Since Mazzocchi was plaintiff's employer, plaintiff is barred by the exclusivity provisions of the Workers' Compensation Act, particularly N.J.S.A. 34:15-8, from asserting a claim for personal injuries against Mazzocchi, or his fellow employees, Imbimbo, Daniel and Gordon.
[7] We assume that the reference to Cooper was inadvertent and the judge meant Gordon.