**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4347-18T2

DONNA HOPKINS,

    Plaintiff-Appellant,

v.

BRUCE BIROC,

    Defendant-Respondent.

_____

          Submitted September 16, 2020 – Decided  October 15, 2020

          Before Judges Ostrer and Vernoia.

          On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1489-17.

          Chance & McCann, LLC, attorneys for appellant (Matthew Weng, on the briefs).

          Leary, Bride, Mergner & Bongiovanni, attorneys for respondent (David J. Dering, of counsel and on the brief).

PER CURIAM

In this personal injury action, plaintiff Donna Hopkins' complaint alleged that while defendant Bruce Biroc was an invited guest in her home, his dog chased her cat, and caused the cat to bite plaintiff when she "grabbed [the] cat in an attempt to avoid the cat getting injured" by the dog.[1] Plaintiff also alleged the cat bite caused severe injuries requiring hospitalization and medical treatment.

The parties agreed to a trial on the issue of liability only, subject to a high-low agreement on damages. Following the trial, at which only plaintiff and defendant testified, the jury returned a no-cause verdict on plaintiff's negligence claim.

Plaintiff appeals from the verdict, claiming the court erred by barring evidence concerning defendant's consumption of beer prior to the incident and by barring plaintiff's presentation of her daughter as a rebuttal witness. Having reviewed the record in light of the applicable law, we find no merit to plaintiff's arguments, and we affirm.

---

[1] At trial, plaintiff's counsel advised the court plaintiff divorced subsequent to the filing of the complaint, and counsel moved to amend the complaint to identify plaintiff by her maiden name, Donna Marie Urnaitis. During trial, plaintiff was sworn as a witness and otherwise identified by her maiden name. However, the record on appeal does not include an order granting her request to amend the complaint, and the final judgment and plaintiff's submissions on appeal refer to her as Donna Hopkins.

On the first day of trial, prior to the commencement of jury selection, the court addressed pretrial issues, two of which are pertinent to this appeal. First, the court addressed the number of trial witnesses, noting it understood only plaintiff and defendant would testify. Plaintiff's counsel stated he intended to call plaintiff's daughter as a rebuttal witness. Defendant's counsel objected, explaining plaintiff had not identified her daughter as an individual with knowledge of any pertinent facts in her interrogatory answers, and her daughter was not listed in the parties' pretrial submissions to the court.[2] The court sustained defendant's objection, finding plaintiff could not call her daughter as a witness because the child was "never named or identified in any document" and was first mentioned only on the "eve of trial."

The second pretrial issue addressed by the court that is challenged on appeal arises from plaintiff's pretrial submission stating she intended to present evidence defendant consumed "several beers" during the hours prior to the dog-and-cat incident. In her pretrial submission, defendant's counsel noted she

---

[2]  In her pretrial submission to the court, see R. 4:25-7(b), plaintiff identified only herself, defendant, and a physician as trial witnesses. Plaintiff does not dispute she failed to identify her daughter as an individual with knowledge of facts pertinent to her cause of action in her answers to defendant's interrogatories.

A-4347-18T2

intended to object to the evidence because it was not probative and was prejudicial.

Plaintiff's counsel represented to the court that she did not intend to prove or assert defendant was intoxicated, but instead sought to introduce the evidence solely to establish defendant "was drinking. That's it." The court did not initially decide the issue because a motion in limine to exclude the evidence had not been filed.

Before and after jury selection the following day, the court again addressed defendant's objection to plaintiff's plan to introduce evidence defendant consumed beer during the hours prior to the dog-and-cat incident. The court concluded evidence concerning defendant's consumption of beer was irrelevant because plaintiff did not intend to present evidence of intoxication, and the proffered evidence presented a risk of undue prejudice, confusion of the issues, and misleading the jury. The court sustained defendant's objection to the evidence and barred its admission at trial.

Plaintiff testified at trial that she and her then-husband have been friends with defendant since 1998, and defendant is the godfather of plaintiff's oldest daughter. To her knowledge, defendant had never owned a dog. Plaintiff explained that at about 2:45 p.m. on July 1, 2015, defendant arrived at the home

she then shared with her husband and two daughters, and defendant and her husband spent several hours talking in the kitchen.[3] During this time, plaintiff moved around the house "a little bit" and also sat on a couch watching television with her daughter. At around 7:00 p.m., defendant said he "forgot" he left his dog in his car and he was leaving the house to check on the dog.

Plaintiff further testified defendant returned to the house, opened the front door, and his "little" dog ran toward plaintiff who was seated on a couch holding her cat.[4] Plaintiff said defendant had a leash in his hand, but it was untethered to the dog. Plaintiff testified the dog charged at her and jumped onto her legs for about thirty seconds while defendant stood and watched. Plaintiff explained the dog tried to attack her cat; she attempted to push the dog "off of" her; and, at the same time, she held onto her cat. During this time, the cat bit plaintiff's finger and caused the injuries for which plaintiff sought damages in the complaint.

---

[3] The complaint alleged the incident occurred on July 2, 2015, and the parties' respective counsel variously argued the incident occurred on that date, but plaintiff testified it occurred on July 1, 2015.

[4] Plaintiff agreed the dog was "little" and was the "about the same size as [her seventeen-pound] cat."

A-4347-18T2

Defendant testified he was a friend of plaintiff, her former husband, and their two daughters since 1988 or 1989, and he had a history of adopting rescue dogs that was known to plaintiff. For example, he explained he brought a rescue dog he previously owned to plaintiff's older daughter's christening.

According to defendant, on the date of the incident, he went to plaintiff's home to "say hello" and show her daughters the new miniature greyhound dog he adopted a "couple weeks" earlier. Defendant described the dog as "happy" and not "aggressive." Defendant explained he knocked on the front door and said, "I got a little greyhound [and] I'll bring him in," and plaintiff and her daughters said "okay."

Defendant testified he went to his car, retrieved the dog, and brought him into the house on a leash. Plaintiff was seated on a couch holding her cat. Defendant saw the dog go "towards the cat," and "[t]he cat freaked out and meowed and, you know, and [plaintiff] got bit." The cat then "scurried off." Defendant said plaintiff went into the bathroom and he spoke to plaintiff's husband. When plaintiff exited the bathroom, he told her she should get the bite "checked out," and he left. Defendant admitted he brought the dog into the house knowing plaintiff had a cat and the "cat's reaction was a result of [his] dog

coming into the house," but he explained the dog was on a six-foot leash and the dog never jumped on plaintiff.

When the trial continued on the morning following defendant's testimony, the court again addressed plaintiff's counsel's request to call plaintiff's oldest daughter, this time as a rebuttal witness. From the colloquy included in the trial record, it appears the issue had been discussed during off-the-record discussions between the court and counsel after the prior day's proceedings.[5] We glean from the record that, as a result of those discussions, plaintiff's counsel came to the conclusion the court determined it would not permit the child to testify because she had not been identified in plaintiff's discovery responses and pretrial submissions. Plaintiff's counsel advised the court that, based on that conclusion, the child had not been brought to the court to testify.

The court explained counsel's conclusion was incorrect and it had not decided the issue the previous day, and it had so advised plaintiff's counsel at

---

[5] Defendant's counsel noted that it was her understanding the discussions "were off the record." We remind counsel and the court that off-the-record discussions concerning issues of importance during trial hamper our ability to fully review the record on appeal. See Pressler & Verniero, Current N.J. Court Rules, cmt. 3.2 on R. 1:2-2 (2020). When there are in-chambers discussions "concern[ing] important subjects such as the procedure to be utilized, a record must be made or a summary placed on the record as to what transpired. Only then is effective appellate review insured." Klier v. Sordoni Skanska Const. Co., 337 N.J. Super. 76, 86 (App. Div. 2001).

that time. In any event, the court informed counsel it had decided to allow plaintiff's daughter to testify as a rebuttal witness. Plaintiff's counsel proffered that plaintiff's daughter would rebut only defendant's testimony that he told plaintiff and her daughters he was going to bring the dog into their house.

The court offered to briefly delay the continuation of the trial to allow plaintiff to pick her daughter up at her nearby school and bring her daughter to the court to testify. Plaintiff's counsel requested an opportunity to speak with plaintiff about producing her daughter so she could testify as a rebuttal witness. The court granted the request, and there was a break in the proceedings.

Following the break, plaintiff's counsel informed the court plaintiff did "not have [her] daughter" at the court and he "want[ed] to call [plaintiff] back to the witness stand" as a rebuttal witness. He also stated, "That's it. That's what I want to produce." Plaintiff made no further requests related to the production of her daughter as a witness, and she did not call her daughter as a rebuttal witness.

Plaintiff testified briefly in rebuttal. She explained she had never seen any of defendant's dogs prior to the date of the incident.

Following the summations of counsel and the court's final instructions on the law, the jury returned a no-cause verdict. The jury determined plaintiff

failed to prove by a preponderance of the evidence that defendant's negligence was the proximate cause of her injury. The court subsequently entered an order for judgment in plaintiff's favor in the amount of $30,000 based on the high-low agreement, which provided for "the low [of] $30,000 and the high [of] $150,000." This appeal followed.

On appeal, plaintiff offers two arguments for our consideration. She claims the court erred by barring evidence defendant consumed beer during the several hours he allegedly spent at her home prior to the incident during which she was injured. Plaintiff also contends the court erred by barring plaintiff from calling her daughter as a rebuttal witness. Defendant asserts plaintiff's arguments lack merit and the appeal should be dismissed as moot because the case was finally resolved under the parties' high-low agreement.

We first consider defendant's claim the appeal is moot. He argues the parties entered into a high-low agreement constituting a settlement that "renders any appeal between the parties as moot." His argument is founded on the premise that plaintiff voluntarily resolved her claim in the high-low agreement and, therefore, she forfeited her right to appeal. In other words, although defendant argues the high-low agreement renders the appeal moot, he actually

contends the high-low agreement constitutes a contractual bar to the prosecution of this appeal.

"A high-low agreement, like the one at issue in this case, is '[a] settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome at trial.'" Serico v. Rothberg, 234 N.J. 168, 177 (2018) (alteration in original) (quoting Black's Law Dictionary 797 (9th ed. 2009)). A high-low agreement is a "device used in negligence cases," Benz v. Pires, 269 N.J. Super. 574, 578 (App. Div. 1994), that "protects a plaintiff from the danger of receiving less than the floor amount and protects a defendant from exposure to a judgment higher than the agreed ceiling," id. at 579.

A high-low agreement "is a settlement contract and [is] subject to the rules of contract interpretation." Serico, 234 N.J. at 177. We will "enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purposes of the contract.'" Id. at 178 (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)). In our interpretation of a high-low agreement, we must consider the agreement's terms "in the context of the circumstances . . . and . . . apply a rational meaning in keeping with the expressed general purpose." Ibid. (quoting County of Atlantic, 230 N.J. at 254).

We enforce the contract as agreed to by the parties, but where an agreement is ambiguous, we "will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining [the] contract's interpretation." Ibid. (quoting County of Atlantic, 230 N.J. at 255).

The parties' high-low agreement was placed on the record and is limited solely to the amount defendant would be required to pay plaintiff based on the jury's findings of comparative negligence. The parties agreed defendant would pay plaintiff a minimum of $30,000 if the jury returned a no-cause verdict and $150,000 if the jury determined defendant was solely negligent for plaintiff's injuries. The parties further agreed the amount paid to plaintiff would be prorated between the high and low amounts based on the jury's allocation by percentages of the parties' comparative negligence. As presented to the court on the record, the parties' high-low agreement did not include any other terms or conditions.

Defendant offers no evidence supporting his claim the high-low agreement included a waiver of the parties' respective rights to appeal from the jury's verdict based on trial court errors, and the record shows the agreement did not include such a waiver. Thus, the record undermines defendant's assertion

11

the high-low agreement included, permitted, or required a waiver of the right to appeal from alleged errors committed by the trial court.

We "will not make a better contract for [the] parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other." James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950) (quoting Kupfersmith v. Delaware Ins. Co., 84 N.J.L. 271, 275 (E. & A. 1912)); see also Benz, 269 N.J. Super. at 579 (explaining that unless the parties agree to the contrary, in a high-low agreement, "[t]he parties agree to let the usual process of trial and judgment operate and control the outcome, under all of the rules applicable to trial determinations"). Because the record does not support a finding the high-low agreement was conditioned on a waiver of the parties' respective rights to appeal from trial court errors, we find no basis to impose such a term. We therefore reject defendant's claim the agreement bars plaintiff's prosecution of this appeal or otherwise renders the appeal moot.

Plaintiff argues we should reverse the no-cause verdict based on the court's purported error in barring evidence plaintiff consumed "several beers" during the more than four hours plaintiff contends defendant spent at her home prior to the cat-and-dog incident. Before the trial court, plaintiff's counsel represented that introduction of the evidence was not for the purpose of

demonstrating defendant was intoxicated. Instead, counsel proffered that the evidence would explain what occurred prior to the incident. As noted, the court sustained defendant's objection to the evidence because it had no probative value and was otherwise unduly prejudicial.

Relevant evidence is generally deemed admissible, N.J.R.E. 402, but it may be excluded under N.J.R.E. 403 when its "'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." Griffin v. City of E. Orange, 225 N.J. 400, 421 (2016) (quoting State v. Koskovich, 168 N.J. 448, 486 (2001)). "[W]hether evidence should be excluded under [N.J.R.E.] 403 because its prejudicial effect outweighs its probative value is an issue remitted to the discretion of the trial court." State v. Harvey, 151 N.J. 117, 184 (1997). We reverse a trial court's decision to exclude evidence under N.J.R.E. 403 only when the trial court commits a clear error of judgment. Ibid.

In Gustavson v. Gaynor, we held that evidence a defendant consumed alcoholic beverages prior to his involvement in an automobile accident "is by itself insufficient to warrant an inference that the [defendant-]driver was intoxicated and that the intoxication was of such a degree as to render him unfit

to drive at the time of the accident." 206 N.J. Super. 540, 545 (App. Div. 1985). We held that to admit evidence of drinking alcohol to establish the negligent operation of a motor vehicle, supporting evidence must be presented "from which the trier of fact may reasonably conclude that the drinking affected the safe operation of the vehicle." Id. at 544-45. We also found applicable the following "general rule": during a trial, "questions cannot be asked which intimate to the jury that a party was intoxicated at the time of [an] accident unless there is supporting evidence . . . .; in the absence of supporting evidence, testimony concerning the drinking of intoxicants should be stricken." Id. at 545 (quoting Ballard v. Jones, 316 N.E.2d 281, 286 (Ill. App. Ct. 1974)).

Here, plaintiff sought admission of evidence defendant consumed beer prior to the incident, but she conceded it did not establish defendant was intoxicated and acknowledged she did not contend that it did. Plaintiff also failed to proffer any other evidence supporting a finding that defendant's alleged consumption of beer resulted in intoxication or impairment, or that the alleged drinking affected him in any manner. See id. at 544-45.

Plaintiff argued that despite the absence of any evidence establishing defendant's intoxication, evidence showing he consumed alcohol was admissible to provide a complete picture of the circumstances leading to the cat-and-dog

14

incident. "Relevancy [of evidence] is tested by the probative value the evidence has with respect to the points at issue." State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990). Lacking any proof of intoxication caused by the purported beer consumption or some other evidence establishing intoxication or impairment, the proffered evidence was unnecessary to provide "narrative completeness" and could not logically establish defendant's alleged negligence. Gustavson, 206 N.J. Super. at 544. The evidence therefore did not have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action," N.J.R.E. 401, and the trial court properly concluded it was irrelevant.

We reject plaintiff's claim a different result is required by our decision in Black v. Seabrook Associates, LTD., where, in a wrongful death and survivorship action, we determined the trial court erred by excluding testimony concerning the decedent's consumption of alcohol in the hours preceding the incident that resulted in his death. 298 N.J. Super. 630, 635 (App. Div. 1997). In Black, the decedent suffered a severed artery when he punched the door to his apartment to gain entry because the door "was stuck." Id. at 632. Testing at the hospital where the decedent was treated and died revealed a .143 blood alcohol content, and a later test revealed a .11 blood alcohol content. Id. at 633.

Another test showed "a trace of cocaine metabolite in [the] decedent's urine." Ibid.

The trial court excluded testimony concerning the decedent's use of alcohol based on a finding "there was insufficient supplemental evidence of alcohol to admit such testimony" under Gustavson. Ibid. We reversed the trial court's decision, and we determined evidence establishing the extent to which the decedent's "judgment and/or coordination were impaired" by his consumption of alcohol was "a proper subject for the jury to consider," and could be established by testimony from two witnesses and "the blood alcohol content results of decedent's blood serum analysis." Id. at 636-37. We further found that evidence satisfied the Gustavson "supplemental evidence standard." Id. at 637.

In Black, defendant sought the admission of the decedent's alcohol consumption prior to the accident to establish the decedent's intoxication or impairment as probative of whether the decedent's negligence caused or contributed to the accident. Id. at 636-37. That is not the case here. Plaintiff's counsel represented to the court he did not seek to introduce the evidence to establish defendant was intoxicated or impaired. During colloquy with plaintiff's counsel, the court stated, "Let's be clear for the [record]. Your

16

argument, whether or not the plaintiff can testify that the defendant . . . was intoxicated or had been drinking. Which is it?" In response, plaintiff's counsel said, "Had been drinking." When later asked by defense counsel about the relevance of the proffered evidence and what plaintiff intend to imply by presenting evidence defendant was drinking beer, plaintiff's counsel replied, "That [defendant] was drinking. That's it."

Plaintiff offered no supplemental evidence of defendant's alleged intoxication or impairment. Plaintiff proffered the evidence only to show defendant was "drinking," and not to establish defendant was intoxicated. Thus, unlike in Black, the trial court was not presented with evidence probative of any alleged intoxication or impairment of defendant resulting from the consumption of alcohol, and plaintiff's counsel represented the evidence was not to be admitted to establish intoxication. The court therefore properly concluded the evidence, as represented in plaintiff's proffer, was not probative of defendant's alleged negligence. See Gustavson, 206 N.J. Super. at 545 (finding evidence of drinking alcohol alone does not support a finding a defendant-driver negligently operated a vehicle); cf. Black, 298 N.J. Super. at 636-37 (finding evidence establishing decedent's intoxication was probative of the decedent's comparative negligence).

Because the evidence as proffered by plaintiff had no probative value, it was properly excluded as irrelevant under N.J.R.E. 402. Moreover, admission of the evidence solely for the purpose of establishing defendant was "drinking," and without any claim or evidence he was intoxicated, presented a substantial risk the jury would have judged defendant's actions during the incident based on irrelevant facts and mere speculation. The court's determination the nonexistent probative value of the proffered evidence was substantially outweighed by the risk of undue prejudice, confusion of the issues, and misleading the jury, N.J.R.E. 403, did not constitute an abuse of discretion.

Plaintiff next argues the no-cause verdict should be reversed because the court erred by barring plaintiff's daughter from testifying as a rebuttal witness. The argument is without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), because it is founded on an inaccurate factual premise. The court did not bar the plaintiff's daughter from testifying as a rebuttal witness. To the contrary, the court ruled plaintiff could call her daughter as a rebuttal witness, and the court stated it would delay the trial to permit plaintiff to produce the child before the jury for her testimony. After conferring with her counsel, plaintiff opted not to produce the child and, instead, testified

on her own behalf in rebuttal. Plaintiff's assertions to the contrary are both unsupported by, and contradicted by, the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4347-18T2