**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2171-22

LUCIANA GONZAGA,

     Plaintiff-Appellant,

v.

ESTATE OF JOSE A. BARROS,
deceased,

     Defendant-Respondent.

_____

JOANA BARROS and NADIA
BARROS,

     Respondents.

_____

Submitted October 29, 2024 – Decided November 18, 2024

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FD-20-1054-22.

Lorraine M. Medeiros, attorney for appellant.

Christopher A. Kozlowski, attorney for respondents Joana Barros and Nadia Barros.

PER CURIAM

In this Family Part matter, plaintiff Luciana Gonzaga appeals from the November 4, 2022 order denying her motion for reconsideration of the trial court's order dismissing the complaint with prejudice, finding a prenuptial agreement (the agreement) between Luciana[1] and her now-deceased husband, Jose Barros, enforceable. Based on our de novo review of the record and prevailing law, we affirm.

I.

We glean the following salient facts from the record. Luciana was born in Brazil and her native language is Portuguese. Luciana and Jose entered into a romantic relationship in 2007. Prior to the relationship, Luciana had one child—Luan—and Jose had two—Joana and Nadia. On December 5, 2010, Luciana and Jose had a child together, Sophia.

In contemplation of their marriage, Luciana and Jose executed an agreement, which is dated February 24, 2015. Attorney Nelson C. Monteiro

---

[1] Since several parties share the surname Barros, we refer to the parties by their first names for clarity and intend no disrespect by doing so.

notarized Jose's signature on January 9, and attorney Anabela DaCruz-Melo notarized Luciana's signature on February 24.

Paragraph 7 of the agreement provides that Luciana and Jose would each maintain certain assets and income as separate property, and Luciana "waive[d] and release[d] all rights and interests," including "distribution in intestacy" which she might otherwise have acquired as his widow or distributee.

Luciana and Jose married on March 18, 2015. Following the marriage, Jose financially supported Luciana, Sophia, and Luan. The couple remained married until Jose's death on November 23, 2021.

Jose died intestate on November 23, 2021. Luciana asserts that Jose spoke often about his will and his intention to provide for her and Sophia after his death. However, no will was found after Jose's death. Luciana asserts that Jose made representations regarding his intentions to financially support her and Luan to the federal government in connection with an immigration application for her and Luan to become legal residents. There are no corroborating documents in the record which support her assertion.

Luciana was appointed administrator of Jose's estate (the Estate). Joana and Nadia opposed Luciana's claims for relief as interested parties and potential heirs. After a hearing on March 10, 2022, the Probate Part appointed a third-

3

party administrator for the Estate and a guardian ad litem (GAL) to represent Sophia's interests, and instructed Luciana to file a complaint in the Family Part to determine the validity of the agreement.

Luciana filed a two-count verified complaint in the Family Part seeking to (1) dissolve the agreement as unconscionable, thus allowing her to claim part of the Estate, and (2) compel the Estate to provide interim financial support to her and Sophia. Luciana also demanded punitive damages, court costs, and attorney's fees. In her verified complaint, Luciana asserts she was unduly pressured into signing the agreement, contending Jose told her if she did not sign it, he would not marry her and she would be separated from Sophia when she was deported back to Brazil.

Luciana was represented by a Portuguese-speaking attorney in connection with the agreement, but contends she did not understand the agreement since it was written in English, the provisions of the agreement were never explained to her, and she did not have the opportunity to negotiate the terms. Luciana alleges that she was not permitted to choose her own attorney to review the agreement, but rather, Jose chose DaCruz-Melo to witness Luciana signing the document. Luciana contends she was never given a copy of the executed agreement, and the schedule of Jose's assets set forth in the agreement was incomplete.

A-2171-22

Although Luciana states she did not know what she was signing, she also contends that Jose told her the provisions of the agreement were of "no consequence" because he did not intend to enforce them. Luciana alleges this stipulation, as well as Jose's promise to support her and Sophia after his death, was made in front of unidentified third-party witnesses.

On September 20, 2022, the Family Part held oral argument on a motion and cross-motion as to the enforceability of the agreement, Luciana's request for financial support for Sophia, and her request to use certain assets that Joana and Nadia sought to liquidate. After the proceedings, the trial court entered an order which: (1) deemed the agreement enforceable, (2) denied Luciana's motion to set aside the agreement, (3) transferred all remaining issues surrounding the Estate, including distribution of support for Sophia, to the Probate Part for further consideration, and (4) dismissed Luciana's verified complaint with prejudice.

Luciana filed a motion for reconsideration, arguing the Family Part (1) made an inappropriate credibility judgment in reaching its decision, (2) failed to give the parties adequate notice it would resolve the ultimate issue in the case in connection with the motion, and (3) failed to afford her a sufficient opportunity to present relevant evidence.

 A-2171-22

The Family Part issued an order and written opinion denying reconsideration on November 4, 2022. The trial court rejected Luciana's argument that she did not have sufficient notice that the ultimate issue of the enforceability of the agreement would be decided at oral argument on September 20, since Luciana requested in the verified complaint that the court both determine the validity of the agreement and compel interim relief. The trial court explained "there could be no discussion of interim spousal support paid via the [E]state if the [agreement] was deemed enforceable." Accordingly, the trial court determined "the validity of the [agreement] has to be adjudicated first before even entertaining the issue of interim support."

The trial court also rejected Luciana's argument that she was not represented by counsel at the signing of the agreement. The trial court stated it was unpersuaded by Luciana's argument that Moses Aspan, Luciana's long-time immigration attorney, was unaware of the agreement. The court further noted Aspan's representation in immigration matters was insufficient to prove DaCruz-Melo was not representing Luciana's interests at the time she signed the agreement.

The trial court was unpersuaded by Luciana's argument that Jose disclosed assets in the agreement that differed from the documentation he filed with the

6

federal government. In the agreement, Jose listed the value of his plumbing business as plus or minus $250,000. However, in support of Luciana's immigration application, Jose stated he made "around $200,000" annually from his plumbing business. The trial court "d[id] not find that there is a material difference" between the two amounts sufficient enough to invalidate the agreement. Rather, the court noted "[i]t seems highly likely . . . that a small business owner such as [Jose] would have significant income fluctuations year over year, and perhaps even month over month," and there was no suggestion the discrepancy was a result of Jose's attempt to hide assets from Luciana.

Accordingly, the trial court found "[p]laintiff never established a prima facie case for challenging the enforceability of the [agreement]," and denied Luciana's motion for reconsideration. This appeal followed.[2]

## II.

Our standard of review of legal conclusions of Family Part judges is the same de novo standard applicable to legal decisions in other cases. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). Interpretation of the

---

[2] The administrator of the Estate and the GAL filed letters of non-participation on appeal.

language of a contract is reviewed de novo. Est. of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 554-55 (App. Div. 2020).

We review a trial judge's decision on whether to grant or deny a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We find "abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

A motion for reconsideration is "an opportunity to seek to convince the court that either 1) it has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010) (internal quotation marks omitted)). The moving party must "state with specificity the basis on which [the motion] is made" and supply "a statement of the matters or controlling decisions that counsel believes the court has overlooked or as to which it has erred." R. 4:49-2.

The trial court's decision to hold a plenary hearing is reviewed for abuse of discretion. See Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). "[N]ot every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995).

III.

Our de novo review of the record and prevailing law leads us to conclude the trial court did not abuse its discretion in denying reconsideration of the order dismissing the complaint and denying interim support predicated on Luciana's failure to establish a prima facie showing that the agreement was unenforceable by clear and convincing evidence.

A.

Prenuptial agreements are enforceable assuming full disclosure and comprehension by each party, and absent unconscionability. Rogers v. Gordon, 404 N.J. Super. 213, 219 (App. Div. 2008). Pursuant to N.J.S.A. 37:2-38, the party seeking to invalidate a prenuptial agreement must prove by clear and convincing evidence that "[t]he party executed the agreement involuntarily[,]" or the agreement is unconscionable. N.J.S.A. 37:2-38(c) also provides that an agreement is unconscionable if, before the execution, the party:

A-2171-22

(1) Was not provided full and fair disclosure of the earnings, property and financial obligations of the other party;

(2) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided;

(3) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party; or

(4) Did not consult with independent legal counsel and did not voluntarily and expressly waive, in writing, the opportunity to consult with independent legal counsel.

We are unpersuaded by Luciana's argument that the trial court was palpably incorrect in finding she did not meet her prima facie burden of establishing the unenforceability of the agreement by clear and convincing proof. Luciana's contentions that she was not apprised of Jose's financial assets prior to execution of the agreement, she was not represented by counsel, and that a copy of the agreement was never given to her or explained to her, do not equate to the clear and convincing prima facie evidence required to meet her substantial burden.

Luciana's claim that her legal representation was deficient as to the agreement is not grounded in the record. First, there is no evidence her immigration attorney had any involvement with the agreement, rather the only

evidence is that attorney DaCruz-Melo was retained. Paragraph fifteen of the agreement sets forth "[e]ach of the parties hereto acknowledge that they have been represented by independent counsel of his or her own choice, and has carefully reviewed [the agreement] with said counsel." As stated by the trial court, simply being "represented by a different attorney . . . with respect to the [agreement]" does not mean that DaCruz-Melo's representation of Luciana was necessarily insufficient. Luciana had years to raise any issues with counsel's representation, if any, and address any deficiencies in the signing of the agreement, obtain a copy and have it translated to her into Portuguese. There is no competent evidence in the record that Luciana was not properly represented in connection with the agreement or given a copy of the document sufficient to meet the clear and convincing evidence standard.

Luciana also fails to support her allegations that Jose's assets, at the time of his death, were not recorded on the financial disclosure section in the agreement. There is no evidence in the record to support counsel's argument that "there is a life insurance policy, bank accounts in Portugal, real property in Portugal, a safety deposit box . . . with several thousands of dollars in cash, and essentially an estate worth multi-millions of dollars" which were not disclosed to Luciana until after the marriage.

11

There was no evidence proffered to the trial court establishing that its denial of Luciana's motion for interim support predicated on the unenforceability of the agreement, dismissal of the complaint was palpably incorrect, or that it failed to appreciate the significance of probative, competent evidence. Thus, we conclude the trial court did not abuse its discretion in denying Luciana's reconsideration motion.

B.

We are unpersuaded that the trial court's order dismissing Luciana's complaint without further discovery was clearly capable of producing an unjust result.

Our review is under the plain error standard, since the issue was not raised to the trial court. R. 2:10-2. "Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Further, the rule sets "a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient . . . .'" State v. Alessi, 240 N.J. 501, 527 (2020) (quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and quoting State v. Macon, 57 N.J. 325, 336 (1971)). We also "generally defer to a trial court's disposition of discovery matters unless the court has abused its

12

discretion or its determination is based on a mistaken understanding of the applicable law." State v. Brown, 236 N.J. 497, 521 (2019) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

Luciana does not point to specific discovery which would have impacted the trial court's decision to deny her motion to set aside the agreement and dismiss the complaint. "[A] plaintiff 'has an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003) (quoting Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1977)).

Rather, Luciana broadly argues the trial court "erred in not setting a discovery schedule." Luciana further proffers the trial court should have found additional discovery was needed as to the unconscionability of the agreement, without the issue having been raised to the trial court, simply because there was an assertion that Jose "pledge[d] financial support for [Luciana] as well as [Luan]," without mention of an agreement. Luciana has not substantiated this sweeping allegation with any proofs in the record nor any jurisprudence requiring a trial court to raise a discovery issue sua sponte.

Setting aside her failure to raise the issue to the trial court, Luciana has not set forth with specificity what additional discovery would have uncovered and how it would have impacted the court's determination that the agreement was valid and enforceable. Without setting forth "with some degree of particularity" what further discovery would cure the deficiencies in her complaint, we conclude Luciana has not met her burden of establishing the trial court erred in not ordering additional time for discovery before dismissing Luciana's complaint. Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015)).

C.

We are unconvinced that Luciana's due process rights were violated based on dismissal of the complaint after the trial court found Luciana did not establish a prima facie showing the agreement was unenforceable. Luciana had sufficient notice that the court was considering the validity of the agreement because she was the party who requested the ruling through her verified complaint. Luciana's motion sought interim support which necessarily required the trial court to determine whether the agreement was an enforceable bar to certain monetary relief.

14

The trial court held oral argument and permitted counsel for both parties to present arguments as to the enforceability of the agreement, which was a finding necessary to decide Luciana's interim support application. Luciana was provided with an interpreter as to those proceedings. Therefore, pursuant to the standard set forth by Klier v. Sordoni Skanska Const. Co., 337 N.J. Super. 76, 84 (App. Div. 2001), we conclude Luciana had notice and an opportunity to be heard.

Finally, Luciana asserts she was deprived of due process because the trial court based its decision on "the relationship of the [c]ourt with the two attorneys involved and nothing more." This contention is belied by the record. We discern no error with the trial court's acknowledgement that both attorneys who represented Jose and Luciana as to the agreement were "well[-]known to th[e] [c]ourt as they are experienced and competent matrimonial practitioners and both of them speak fluent Portuguese." The trial court then proceeded with a thorough analysis as to the language of the agreement, the facts established in the record, and the standard to invalidate the agreement, finding that Luciana had not met her prima facie burden by clear and convincing evidence.

A-2171-22

To the extent we have not addressed any of Luciana's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2171-22